UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KUVEDINA, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | 11 C 1742 |
| vs. | ) ) | Judge Feinerman |
| RAKESH PAI and MHALSA TECHNOLOGIES, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kuvedina, LLC, brought this diversity suit against Defendants Rakesh Pai ("Rakesh") and Mhalsa Technologies, Inc. ("Mhalsa Technologies"), alleging breach of contract, tortious interference with business relationship, common law fraud, and related claims. Because the complaint rested jurisdiction on the diversity statute but did not properly allege the parties' citizenship, the court ordered Kuvedina to show cause why the case should not be dismissed for want of subject matter jurisdiction. Kuvedina responded with a jurisdictional addendum alleging that Kuvedina is a citizen of Illinois, Pai a citizen of Washington, and Mhalsa Technologies a citizen of Kansas and Washington—thus establishing complete diversity. Then, because a review of the complaint revealed that the suit might have no connection to the Northern District of Illinois, the court ordered Kuvedina to show cause why the case should not be transferred under 28 U.S.C. § 1404(a) or § 1406 to the Central District of Illinois. The Central District encompasses Champaign, Illinois, where Kuvedina is located and where it brought a related state court action against Pai and Mhalsa Technologies in November 2010. *Kuvedina, LLC v. Pai*, No. 2010 CH 507 (Cir. Ct. Champaign Cnty., Ill.). Kuvedina responded to the order and Defendants

filed a reply. After considering the parties' legal and evidentiary submissions, the court holds that venue does not lie in the Northern District of Illinois and transfers this case under § 1406(a) to the Central District of Illinois.

**Background**

"In ruling on a [question] of venue [at the pleading stage], the court [takes] all allegations in the complaint as true (unless contradicted by affidavit), draw[s] all reasonable inferences in favor of plaintiff, and may examine facts outside the complaint." *Johnson-Ester v. Schwarzenegger*, 2010 WL 1257787, at *2 (N.D. Ill. Mar. 25, 2010); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). Kuvedina is a consulting firm that provides project management services. Doc. 1 at ¶ 1 & p. 14. In November 2005, Rakesh formed Mhalsa Technologies in Kansas. *Id*. at ¶ 6. Mhalsa Technologies was forfeited on July 15, 2008, for failing to timely file its annual report and filing fees. *Id*. at ¶ 4 & p. 85.

Effective May 2, 2010, Defendants and Kuvedina entered into three contracts: a Subcontractor's Agreement; a Purchase Order; and a Noncompetition, Nondisclosure, and Confidentiality Agreement. Doc. 1 at ¶¶ 3-4 & pp. 14-36. The agreements provided that Rakesh was to perform technical consulting services in Mason, Ohio, for Kuvedina's client, Cognizant Technology Solutions, from May 2010 through October 2010. *Id*. at ¶ 14 & pp. 21, 33-36; Doc. 33-1 at ¶¶ 8, 10. The agreements were notarized in Ohio, Doc. 1 at pp. 20-22, 36, and Rakesh signed them while visiting his family in Kansas, Doc. 33-1 at ¶ 9. The record is silent regarding where Kuvedina signed the agreements and where any negotiations took place. Kuvendia charges that Rakesh tricked Kuvedina into believing that Mhalsa Technologies was still in

business as a corporation, when in fact it had been forfeited in July 2008. Doc. 1 at ¶¶ 5-8, 10-13, 17-18, 54, 57, 60-65. (After the forfeiture, Rakesh operated a sole proprietorship called "Mhalsa Technologies" (no "Inc."), Doc. 33-1 at ¶¶ 3, 15; Doc. 33-3 at ¶¶ 5, 10, which complicates the story but not in a way that impacts venue.)

The relationship soured and Kuvedina terminated the contracts on October 1, 2010. Doc. 1 at ¶ 20 & pp. 45-53, 61-62. According to the complaint, Rakesh then attempted to solicit work directly from Cognizant. *Id*. at ¶ 21 & pp. 49-53, 70. The complaint alleges that Kuvedina warned Rakesh that his actions violated the noncompetition agreement, but that Rakesh ignored the warning and kept soliciting Cognizant. *Id*. at ¶¶ 22-23 & pp. 47-53, 61-62, 70-73. The complaint also alleges that Rakesh refused Kuvedina's repeatedly requests to return a laptop housing proprietary information. *Id*. at ¶¶ 30-35 & pp. 47-53, 61-62, 67-68. In addition, the complaint charges that Rakesh "threatened to destroy [Kuvedina's] business by revealing sensitive payment terms" and complained to Cognizant that he was not being paid by Kuvedina, *id*. at ¶¶ 23, 35 & pp. 49-53, which harmed Kuvedina's reputation and ultimately caused it to lose Cognizant as a client, *id*. at ¶¶ 26-27 & pp. 71-72.

On November 19, 2010, Kuvedina filed suit in state court in Champaign seeking to enjoin Rakesh to return the laptop and to cease soliciting Cognizant. *Id*. at ¶¶ 25, 36 & pp. 54-60. The court issued a temporary restraining on November 24, 2010. *Id*. at ¶ 37 & pp. 63-64. Rakesh returned the laptop on December 8, 2010. *Id*. at ¶¶ 37 & p. 96. The court issued a preliminary and permanent injunction eight days later, on December 16, 2010. *Id*. at ¶ 38 & pp. 65-66.

Rakesh avers in an uncontradicted affidavit that he never performed any work on behalf of Kuvedina in the Northern District of Illinois, never made telephone calls or sent emails to the

Northern District in connection with his relationship with Kuvedina, and never visited Kuvedina's office in the Central District of Illinois. Doc. 33-1 at ¶¶ 11, 13. Rakesh acknowledges that his brother, Vikram Pai, runs a business called "Mhalsa Tech" in Chicago, Illinois. *Id*. at ¶ 14. Vikram acknowledges the same fact. Doc. 33-3 at ¶ 2. But both Rakesh and Vikram aver, again without contradiction, that Mhalsa Tech has no relationship with Mhalsa Technologies (other than the word "Mhalsa," which the brothers use for religious reasons); that Rakesh and Vikram never have worked with each other; that Vikram never has worked with Mhalsa Technologies; and that Vikram's company never was involved in Rakesh's or Mhalsa Technologies' work for Kuvedina or Cognizant. Doc. 33-1 at ¶¶ 14-17; Doc. 33-3 at ¶¶ 6-8.

**Discussion**

Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1406(a) can be invoked only if venue is *improper* in the district where the case was brought. *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 529 (7th Cir. 2002) ("Section 1406(a) of the Judicial Code provides that if a suit is brought in a district that is not a proper venue under 28 U.S.C. § 1391, the judge can transfer it to any district 'in which it could have been brought.'"). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). By contrast to § 1406(a), § 1404(a) can be invoked only if venue is *proper* in the district where the case was brought. *See* 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3844, at 33 (3d ed.

2007 & Supp. 2011) ("Transfer under Section 1404(a) is possible only if venue is proper in the original forum.").

The initial question, then, is whether venue is proper in the Northern District of Illinois. Venue in diversity cases lies "only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Venue does not lie in the Northern District of Illinois under any of the three bases set forth in § 1391(a).

First, Rakesh and Mhalsa Technologies do not "reside" in the Northern District of Illinois. Rakesh resides in the Western District of Washington, which encompasses the Seattle area. That fact alone is fatal to any effort to establish venue under § 1391(a)(1), which applies only if *all* defendants reside in a district. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 11 (1st Cir. 2009).

In any event, Mhalsa Technologies does not reside in the Northern District of Illinois either. "For purposes of venue … , a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State …." 28

U.S.C. § 1391(c). This is a diversity case, so Illinois law determines whether Mhalsa Technologies is subject to personal jurisdiction in the Northern District. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). The Illinois long-arm statute permits the exercise personal jurisdiction "on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because "there is no operative difference between these two constitutional limits," the court asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular [district] only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ibid*. (citation and internal quotation marks omitted). The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum [district]." *Id*. at 444 (internal quotation marks omitted). To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum [district]' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists*, 623 F.3d at 444. "A defendant is subject to general jurisdiction when it has 'continuous and systematic general business contacts' with the forum [district]." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). "This is a demanding standard that requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes." *Id*. at 426. Specific jurisdiction exists "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When the defendant's contacts with the forum concern a contractual relationship, the court must "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger King*, 471 U.S. at 479). A defendant's solicitation of business with the plaintiff is a factor supporting jurisdiction. *See Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985). And where the parties have engaged in a long-term business relationship, contacts that are "individually insignificant" can be "collectively important." *Citadel Grp.*, 536 F.3d at 764.

The record includes no evidence suggesting that Mhalsa Technologies has had any contacts with the Northern District of Illinois, let alone contacts sufficient to support the exercise of general or specific jurisdiction. Mhalsa Technologies is a forfeited Kansas corporation. It contracted with Kuvedina, a company based in the Central District of Illinois, and the contract was performed in Mason, Ohio, which lies within the Southern District of Ohio. Kuvedina

attempts to link Mhalsa Technologies to the Northern District of Illinois by claiming that Rakesh's brother Vikram, who resides in the Northern District, is part of Mhalsa Technologies' senior management. Doc. 31 at 2. In support, Kuvedina submits as evidence a LinkedIn website page identifying Vikram as "Senior Management at Mhalsa Technologies" and an unidentified website page indicating that Vikram lives in Chicago. Doc. 31 at 4-6.

Kuvedina's attempt to link Mhalsa Technologies to the Northern District of Illinois through Vikram fails for two independent reasons. As an initial matter, even if Vikram were a member of Mhalsa Technologies' senior management, that fact, standing alone, would not subject Mhalsa Technologies to personal jurisdiction in the Northern District. Suppose the president of a small business based in Homewood, Illinois (a suburb south of Chicago) lives in Hammond, Indiana (a city bordering Chicago on the other side of the state line). Unless the company *itself* has sufficient contacts in the Northern District of Indiana, it would not be subject to personal jurisdiction there even though its president resides there. *See Riverside & Dan River Cotton Mills v. Menefee*, 237 U.S. 189, 195 (1915) ("the mere fact that an officer of a corporation may temporarily be in the state or even permanently reside therein, if not there for the purpose of transacting business for the corporation, or vested with authority by the corporation to transact business in such state, affords no basis for acquiring [personal] jurisdiction" over the corporation in that state). In any event, the evidence shows that Vikram is not a member of Mhalsa Technologies' senior management. Vikram and Rakesh submitted uncontroverted affidavits to that effect. As for Vikram's LinkedIn user profile, Vikram avers, without contradiction, that the profile incorrectly lists him as senior management of Mhalsa Technologies and that he actually is a principal of his own sole proprietorship, Mhalsa Tech. Doc. 33-3 at ¶¶ 2, 10. Kuvedina could

have undertaken discovery into Vikram's alleged relationship with Mhalsa Technologies, but he did not, which leaves Vikram's affidavit uncontroverted.

Turning to the second font of venue, the Northern District of Illinois is not a district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). The record contains no evidence indicating that any of the events related to this litigation occurred in the Northern District. To the contrary, Rakesh avers that he never performed any work on Kuvedina's behalf in the Northern District and never sent any communications here. Doc. 33-1 at ¶¶ 11, 13. Kuvedina has made no allegations and adduced no evidence casting doubt on Rakesh's averments. Venue therefore does not lie in the Northern District under § 1391(a)(2). *See Caudill v. Keller Williams Realty Int'l, Inc.*, 2011 WL 4007727, at \*3 (N.D. Ill. Sept. 7, 2011) (holding venue improper in a contract dispute where all negotiations, communications, and the performance of the contract took place in other districts); *Lashcon, Inc. v. Butler*, 340 F. Supp. 2d 932, 933-35 (C.D. Ill. 2004) (same).

Finally, venue does not lie in the Northern District of Illinois under the third font, which permits venue in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). As shown above, Mhalsa Technologies is not subject to personal jurisdiction in this District. The same holds for Rakesh, given his lack of contacts with this District. *See Kinslow v. Pullara*, 538 F.3d 687, 690-93 (7th Cir. 2008). And even if one of the Defendants were subject to personal jurisdiction in the Northern District of Illinois, it cannot be said that "there is no district in which the action may otherwise be brought."

One such district is the Central District of Illinois. Two of Kuvedina's five claims concern Rakesh sending fraudulent invoices to Kuvedina in the Central District, Doc. 1 at ¶¶ 54, 57 & pp. 38-44; Rakesh sent multiple emails to Kuvedina in the Central District, *id*. at pp. 49-53; and Kuvedina obtained a temporary restraining order and permanent injunction from a state court located within the Central District, *id*. at pp. 63-66. That is enough to establish venue in the Central District under § 1391(a)(2), which as noted above allows venue in any district where "substantial part of the events ... giving rise to the claim occurred." *See Yes Lifts, LLC v. Normal Indus. Materials, Inc.*, 2011 WL 1770458, at *5 (N.D. Ill. May 9, 2011) (venue was proper in the district where the defendant sent multiple contract-related communications and payments); *Celozzi v. Boot*, 2000 WL 1141568, at *6 (N.D. Ill. Aug. 11, 2000) (venue was proper in the district where the defendant placed telephone calls and sent faxes); *Fogelson v. Iatrides*, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000) (venue is satisfied by "a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action") (citations omitted).

Because venue does not lie in the Northern District of Illinois, § 1406(a) gives the court two options: "dismiss" the case or, "if it be in the interest of justice, transfer [the] case to any district ... in which it could have been brought." 28 U.S.C. § 1406(a); *see Schwarz v. Sellers Markets, Inc.*, __ F. Supp. 2d __, 2011 WL 3921425, at *5 (N.D. Ill. Sept. 7, 2011). Here, the interests of justice counsel transfer, not dismissal. *See Giles v. Cont'l Cas. Co.*, 2010 WL 481233, at *5 (S.D. Ill. Feb. 5, 2010) ("Generally, courts prefer transferring a case to a jurisdiction where venue is proper as opposed to dismissing it … . Transfer … avoids the time-consuming and justice-defeating technicalities required to refile a case in [another] venue."). As

for where the case should be transferred, the Central District of Illinois is the most appropriate forum; Kuvedina is located there, and so is the state court where the parties have already litigated issues related to the contracts at issue in this case. *See In re Factor VIII or X Concentrate Blood Prods. Litig.*, 484 F.3d 951, 955 (7th Cir. 2007) (holding that a plaintiff's home forum is an appropriate forum for litigation); *United States ex rel. Miller v. Supportkids, Inc.*, 2004 WL 3250124, at *2 (S.D. Ind. Dec. 15, 2004) (citing prior litigation in a district as a factor supporting transfer to that district).

## Conclusion

For the foregoing reasons, this case is transferred to the Central District of Illinois pursuant to 28 U.S.C. § 1406(a). Because the case is being transferred, the court offers no view of Defendants' pending motion to dismiss under Rules 12(b)(1) and 12(b)(6). *See In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) ("the district court [is] not required to determine its own subject-matter jurisdiction before ordering [a] case transferred").

November 8, 2011

_____
United States District Judge