UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KUVEDINA, LLC, an Illinois Limited Liability Company,  )<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>RAKESH PAI and MHALSA TECHNOLOGIES, a Forfeited Kansas Corporation,  )<br>)<br>Defendants.  )<br>And  )<br>)<br>RAKESH PAI. Individually and doing business as MHALSA TECHNOLOGIES,  )<br>)<br>Counter-Plaintiff,  )<br>v.  )<br>)<br>KUVEDINA, LLC, an Illinois Limited Liability Company,  )<br>)<br>Counter-Defendant.  ) | Case No. 11-CV-2282 |

**OPINION**

This case is before the court for ruling on the Motion to Dismiss (#99) and Motion for Summary Judgment (#101) filed by Defendant Rakesh Pai, individually and doing business as Mhalsa Technologies.[1]  This court has carefully reviewed the arguments of the parties and the documents filed by the parties.  Following this careful and thorough review, this court accepts the Report and Recommendation (#112) filed by Magistrate Judge David G. Bernthal and DENIES Defendant's Motion to Dismiss (#99).  Defendant's Motion for Summary Judgment (#101) is GRANTED in part and DENIED in part.  Summary judgment is granted

---

[1] This court will refer to Pai and Mhalsa Technologies collectively as "Defendant."

on Plaintiff's conversion claim and denied as to Plaintiff's claims of breach of contract, tortious interference with business relationship and common law fraud.

FACTS[2]

Plaintiff, Kuvedina, LLC, is an Illinois Limited Liability Company that serves as a consulting firm and provides project management services to businesses throughout the United States. Anil Baddi lives in Champaign, Illinois and is the sole shareholder, director and officer of Plaintiff. On or about February 18, 2010, Plaintiff entered into a contract with Cognizant, Inc. (Cognizant), one of the nation's largest consulting firms, to provide consulting services for Cognizant's client, WellPoint, Inc. Under the contract, Plaintiff was to receive monies in return for providing the services of consultants hired by Plaintiff. Therefore, Plaintiff sought to hire consultants with the kind of expertise to accommodate Cognizant and WellPoint. Effective May 2, 2010, Plaintiff and Defendant Rakesh Pai entered into a Sub-Contractor's Agreement and related agreements whereby Defendant would provide consulting work to Cognizant and WellPoint.

Problems developed in the relationship between Plaintiff and Defendant. One of the problems was that Plaintiff insisted that Defendant provide services at Cognizant's location in Ohio, and Defendant received permission from an employee of WellPoint to work from home. Plaintiff terminated its agreement with Defendant some time in the fall of 2010. Two notices were sent to Defendant which stated that Plaintiff expected November 4, 2010 to be

---

[2] The facts are taken from Defendant's statement of undisputed material facts, Plaintiff's statement of additional material facts and the documents submitted by the parties, including the deposition transcript from the deposition of Anil Baddi. This court has only included facts which are adequately supported by evidence in the record.

the last date of performance of any services. On November 19, 2010, Plaintiff filed a Petition for Injunction against Defendant in the circuit court of Champaign County. A temporary restraining order was entered on November 24, 2010. The order required Defendant to return a laptop computer and proprietary information to Plaintiff. Baddi signed a receipt on December 8, 2010, acknowledging that Plaintiff received the laptop and other items from Defendant. On December 16, 2010, the circuit court entered an Order Granting Injunctive Relief which prohibited Defendant from disclosing or continuing to use any proprietary information received from Plaintiff or Plaintiff's clients and from soliciting or continuing to communicate in any way with any of Plaintiff's clients.

In August 2011, Plaintiff filed a petition for rule to show cause, alleging that Defendant violated the injunction. Defendant moved to dismiss the petition and also filed a motion for sanctions. The trial court granted Defendant's motion for sanctions and awarded $2,730. Plaintiff appealed and the Illinois Appellate Court, Fourth District, affirmed. The court concluded that Plaintiff did not show that Defendant violated the injunction and found that the trial court did not abuse its discretion in awarding sanctions. The court stated that Plaintiff "and its counsel should have been able to ascertain the communications were not barred based on the plain language of the communications, the injunction, and the Shareholder's Agreement." *Kuvedina, LLC v. Pai*, Case No. 2012 IL App (4th) 120072-U (unpublished order entered 11/6/2012). Plaintiff's case against Defendant remains pending in the circuit court of Champaign County.

## PROCEDURAL HISTORY

On March 13, 2011, Plaintiff filed a Complaint (#1) against Defendant in the Northern District of Illinois. Jurisdiction was based on diversity because Plaintiff is a citizen of Illinois and Defendant is a citizen of either Kansas or Washington State. Plaintiff alleged that, when entering the contract, Defendant made false representations that Mhalsa Technologies was an active Kansas corporation, in good standing. Plaintiff also alleged that Defendant collected payments from Plaintiff despite his absence from Plaintiff's client's place of business. Plaintiff further alleged that Defendant threatened to destroy Plaintiff's business by revealing sensitive payment terms and refused to return a laptop computer and proprietary information, requiring Plaintiff to obtain a restraining order in the Champaign County court. Plaintiff alleged that it lost its present contract with Plaintiff's client (Cognizant) as a direct result of Defendant's actions. In Count I, Plaintiff sought damages for breach of contract. In Count II, Plaintiff sought damages for tortious interference with business relationship. In Count III, Plaintiff sought damages for conversion, and, in Count V, for common law fraud.[3] Baddi signed a "Verification by Certification" attached to the Complaint which stated that he "certifies, under penalties as provided by law that the statements set forth in this Complaint are true and correct."

On November 29, 2011, this case was transferred to this court. On February 13, 2012, this court entered an Order (#48) which granted, in part, and denied, in part, Defendant's Motion to Dismiss. On March 23, 2012, Defendant filed an Answer (#53) to Plaintiff's

---

[3] Counts IV and VI were dismissed on February 13, 2012.

Complaint and a Counterclaim (#54). In the Counterclaim, Defendant alleged that he performed services for Plaintiff in October 2010 and November 2010. Defendant alleged that he submitted an invoice to Plaintiff in the amount of $8,064.00 for work performed in October 2010 and an invoice in the amount of $6,528.00 for work performed in November 2010. Defendant therefore sought damages from Plaintiff in the amount of $14,592.00.[4]

A scheduling conference was held on September 5, 2012, and a Discovery Order (#73) was entered on September 18, 2012. The Discovery Order set a discovery deadline of April 1, 2013 and a deadline for filing case dispositive motions of June 17, 2013. No jury trial date was set. On June 17, 2013, Defendant filed a Motion to Dismiss (#99) and a Motion for Summary Judgment (#101) with attached exhibits.[5]

In support of the Motion for Summary Judgment, Defendant provided a copy of the transcript of the deposition of Baddi, taken March 14, 2013. Defendant has also submitted documents which show that Plaintiff filed a lawsuit in the Southern District of Ohio, Eastern Division. In the Ohio action, Plaintiff sued Cognizant, Crystalsoft, Inc., and Mahesh Kashyap, an agent of Cognizant. Plaintiff alleged that Cognizant's late payment of Plaintiff's invoices caused it to be unable to pay its consultants in a timely fashion, resulting in several consultants leaving Plaintiff. Plaintiff further alleged that Cognizant caused sensitive

---

[4] Plaintiff filed an Answer and Affirmative Defenses to Counterclaim (#93) on April 16, 2013, after being allowed leave to file a late Response.

[5] Defendant also filed a Motion for Judgment on the Pleadings (#106) on August 8, 2013. Defendant argued that the forum selection clause in the agreement between the parties provided that exclusive jurisdiction over any dispute was in the Champaign County circuit court. On September 12, 2013, this court entered an Order (#111) and granted Plaintiff's Motion to Strike Defendant's Motion for Judgment on the Pleadings (#108). This court agreed with Plaintiff that Defendant's Motion was filed nearly two months after the expiration of the deadline for filing case dispositive motions. Defendant's Motion (#106) was therefore stricken.

information about its business practices and billing rates to be released to one or more third parties, also causing Plaintiff to lose consultants. Plaintiff also alleged that Kashyap engaged in conduct which resulted in inhibiting Plaintiff's business relationship with Cognizant. In the Ohio action, Plaintiff stated that it was seeking damages in an amount exceeding $4,000,000.00. Baddi filed an Affidavit in the Ohio case, dated August 16, 2012, stating that he declared under penalty of perjury that these allegations were "true and accurate to the best of my knowledge, information and belief."

## ANALYSIS

## MOTION TO DISMISS

In the Motion to Dismiss (#99), Defendant argued that this court should abstain from exercising jurisdiction and dismiss this action because the action pending in the circuit court of Champaign County involves the same parties and the same underlying facts. Plaintiff filed a Memorandum in Opposition (#103). Plaintiff argued that Defendant was aware of the state court litigation pending in Champaign County from the time Plaintiff filed its Complaint in this case. Plaintiff pointed out that Defendant had waited more than two years to raise the issue of "parallel litigation" and, in fact, had filed a counterclaim in this case.

On September 25, 2013, Magistrate Judge David G. Bernthal entered a Report and Recommendation (#112). Judge Bernthal, after careful analysis, recommended that Defendant's Motion to Dismiss should be denied because abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) was not warranted in this case. Defendant has not filed an objection to the Report and Recommendation and the time

to do so has expired. This court, therefore, accepts Judge Bernthal's well-reasoned and well-supported recommendation. Defendant's Motion to Dismiss (#99) is DENIED.

## MOTION FOR SUMMARY JUDGMENT

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture." *Singer*, 593 F.3d at 533, *quoting Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). The court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *See Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001); *Townsend v. Hinsley*, 2007 WL 731454, at *2 (S.D. Ill. 2007).

## II. PLAINTIFF'S CLAIMS

In his Motion for Summary Judgment (#101), Defendant argued that summary judgment is appropriate in this case because Plaintiff, through its owner Baddi, could not testify or produce testimony to support its various claims. Defendant argued that Baddi's deposition testimony was replete with non-answers and attempts by Baddi to evade the questions asked. Defendant argued that Baddi's testimony did not support the allegations of Plaintiff's Complaint either in substance or as to the damages claimed. Defendant argued that Baddi was not able to testify as to a single basis or calculation for the damages Plaintiff claimed it incurred as a result of the alleged breach of contract or purported fraud. Defendant contended that Plaintiff could not prove that it suffered any damages. Defendant also argued that he was entitled to summary judgment on Plaintiff's conversion claim because Plaintiff voluntarily paid Defendant the $38,400.00 it claimed Defendant converted. Defendant argued that Plaintiff did not provide one shred of evidence that would establish that Plaintiff still owned or had the right to funds it voluntarily paid to Defendant to compensate for work performed between May and October 2010.

In its Response (#103), Plaintiff pointed out that Baddi testified at his deposition that Plaintiff was damaged by Defendant's actions and that damages had not been calculated because discovery was not complete. Plaintiff attached Baddi's Declaration, dated July 17, 2013. In the Declaration, Baddi provided damages calculations and stated that Plaintiff's damages are at least $592,596, plus the $38,400 paid to Defendant in compensation for his services. Plaintiff argued that genuine issues of material fact existed as to all of its claims.

Plaintiff also argued that it should be allowed to proceed on its conversion claim. Plaintiff contended that all of the case law cited by Defendant is distinguishable.

In his Reply (#110), Defendant argued that, notwithstanding the self-serving "calculations" that Baddi has now "produced," Plaintiff still has no material evidence in support of this case as there are no underlying facts upon which the calculations of damages are based. Defendant also noted that Plaintiff's attempts to show that certain actions or inactions of Defendant caused Cognizant to stop using its consultants, resulting in lost profits, are squarely contradicted by Plaintiff's allegations in the Ohio case that Cognizant's actions caused its damages. Defendant argued that this court should enter summary judgment in his favor because Plaintiff "cannot prove its damages, either because it cannot elucidate its damages or because it cannot make up its mind as to which entity caused them." Defendant also argued that, as far as the conversion claim, Plaintiff cannot prove that it had any right to the funds, the essence of a conversion claim.

This court will first consider Defendant's argument regarding Plaintiff's conversion claim. In its Complaint (#1), Plaintiff alleged that Defendant was liable for conversion because Defendant "fraudulently collected monies and converted the Plaintiff's monies without performing work as agreed upon in the contract." Plaintiff attached documentation which showed that Defendant submitted invoices to Plaintiff for work performed under the contract and Plaintiff made payments to Defendant in the total amount of $38,400.00.

"At common law, conversion is the 'wrongful possession or disposition of another's property as if it were one's own; an act or series of acts or willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby

that other person is deprived of the use and possession of the property.'" *In re Karavidas*, ____ N.E.2d ___, 2013 WL 6038781, at *11 (Ill. 2013), *quoting* Black's Law Dictionary 381 (9th ed. 2009). The Illinois Supreme Court has stated that "'[a] conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time . . . .'" *Karavidas*, 2013 WL 6038781, at *11, *quoting Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.*, 41 N.E. 888, 890 (1895). Under Illinois law, in the context of a civil case, "'[t]o prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.'" *Karavidas*, 2013 WL 6038781, at *11, *quoting Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008). In *Gen. Motors Corp. v. Douglass*, cited by Defendant, the Illinois Appellate Court carefully reviewed the history of a cause of action for conversion in Illinois and stated that it "refuse[d] to say that [Defendant] converted property which was voluntarily given to him in the first instance." *Douglass*, 565 N.E.2d 93, 100 (Ill. App. Ct. 1990). The court in *Douglass* noted that the Illinois Supreme Court held that "conversion cannot lie for money represented by a general debt or obligation." *Douglass*, 565 N.E.2d at 100, *citing In re Thebus*, 483 N.E.2d 1258, 1262 (Ill. 1985).

The allegations of Plaintiff's Complaint, and the documents attached to the Complaint, show that Defendant submitted invoices to Plaintiff for work performed which Plaintiff paid. Plaintiff now wants this money back because it claims that Defendant did not follow all of the terms of the contract and, according to Plaintiff, misrepresented that Mhalsa

Technologies was an existing corporation in good standing. This court agrees with Defendant that Plaintiff's allegations, and the documentation submitted, conclusively show that no conversion occurred under Illinois law. Plaintiff voluntarily paid Defendant for work performed and, despite its disagreements with Defendant, cannot establish that (1) it had a right to the property; (2) it had an absolute and unconditional right to the immediate possession of the property; (3) it made a demand for possession; and (4) Defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *See Karavidas*, 2013 WL 6038781, at *11; *Douglass*, 565 N.E.2d at 100. This court therefore concludes that Defendant is entitled to summary judgment on Count III of Plaintiff's Complaint which claims conversion by Defendant.

Defendant has also argued that he is entitled to summary judgment on Plaintiff's other claims because Plaintiff has not provided evidence to support his claims for damages. Defendant noted that Baddi's deposition testimony was vague and evasive and provided no basis for the damages claimed in his Complaint. In his Reply, Defendant argued that Baddi's "self-serving" calculations in his Declaration were not adequately supported. In his Declaration, however, Baddi stated that Plaintiff was damaged by Defendant's actions and set out calculations of the damages suffered. The general rule in the Seventh Circuit is that unsubstantiated, self-serving affidavits may be used to defeat a motion for summary judgment. *United States v. Funds in Amount of $100,120.00*, 730 F.3d 711, 718 (7th Cir. 2013). The Seventh Circuit recently stated that "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving" but that "[a]s we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used

to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). A well-known exception to this rule is that courts "do not allow litigants to manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony." *$100,120.00*, 730 F.3d at 718. This court agrees with Plaintiff that Baddi testified at his deposition that Plaintiff suffered damages and that he had not calculated the damages because discovery was not completed. Therefore, this court concludes that Baddi's Declaration, though uncorroborated and self-serving, does not contradict his prior sworn testimony. *See $100,120.00*, 730 F.3d at 718.

This court therefore concludes that Defendant has not shown that he is entitled to summary judgment on Plaintiff's remaining claims. This court does note that Plaintiff may have a difficult time convincing a jury to believe its version of events given Baddi's vague and evasive testimony during his deposition and the apparently contradictory allegations sworn to in Baddi's affidavit filed in the Ohio case. However, as noted previously, this court does not determine the truth of asserted matters at the summary judgment stage of the proceedings. *See Dykema*, 261 F.3d at 704. This court cannot resolve issues of credibility when deciding a motion for summary judgment. *Williams v. City of Chicago*, 733 F.3d 749, 752 (7th Cir. 2013).

IT IS THEREFORE ORDERED THAT:

(1) This court accepts Judge Bernthal's Report and Recommendation (#112). Defendant's Motion to Dismiss (#99) is DENIED.

(2)  Defendant's Motion for Summary Judgment (#101) is GRANTED in part and DENIED in part.  Judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's conversion claim.  Plaintiff's claims of breach of contract, tortious interference with business relationship and common law fraud remain pending along with Defendant's counterclaim against Plaintiff.

(3) This case will be assigned to Judge Colin S. Bruce for trial.  After the case has been assigned to Judge Bruce, a telephone status conference will be scheduled so a final pretrial and jury trial can be set.

ENTERED this 10th day of December, 2013.

s/MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE